Josefina CABRALES, individually and as Administratrix of the Estate of her deceased son, Sergio Alvarez, Ephraim Alvarez, Jr., Angelina Alvarez Irizarry, and Francisco Alvarez, all the natural siblings of their deceased brother, Sergio Alvarez, and Michael L. Harper, Plaintiffs,

v.

COUNTY OF LOS ANGELES; E. Bryant, S. Garren, R. Lowery, C. McCullough, J. Merrifield, J. Rivera, Deputy Wilson, J. Young, Deputy Baytos, Deputy Collins, D. Stothers, Deputy Odenthal, R. Tardiff, Deputy Vandurro, K. Mannis, R. Simmons, J. Barrett, S. Reed, Deputy Miller, Samuel Sanders, Dan Burt, Daniel Keck, Joseph Barrett, Ronald Black, and Sherman Block, Defendants.

No. CV84–8084–MRP(Px).

United States District Court,
C.D. California.

Sept. 3, 1986.

On Motions to Dismiss and for Summary Judgment Oct. 17, 1986.

Stephen Yagman and Marion R. Yagman, Yagman & Yagman, Los Angeles, Cal., for plaintiff.

De Witt W. Clinton, County Counsel by Kevin C. Brazile, Sr. Associate County Counsel, Los Angeles, Cal., for defendants.

## MEMORANDUM AND ORDER GRANTING DEFENDANT VARGAS' MOTION FOR RECONSIDERATION

PFAELZER, District Judge.

Defendant Dr. M. James Vargas' motion for reconsideration came on for hearing before the Honorable Mariana R. Pfaelzer on August 11, 1986. The Court, having considered the papers filed and the oral arguments made, grants the motion and orders that defendant Vargas be dismissed from this action.

## I. BACKGROUND

On January 3, 1984 Sergio Alvarez ("Alvarez") committed suicide while incarcerated in the Los Angeles County Jail ("Jail"). Plaintiffs, heirs and survivors of Alvarez, filed this action on October 18, 1984 seeking compensatory and punitive damages for alleged violations of Alvarez's civil rights. In their original complaint, plaintiffs named only the City and County of Los Angeles as defendants. Subsequently, plaintiffs amended their complaint several times, dropping the City of Los Angeles and adding individual deputy sheriffs as defendants.

On April 18, 1986 plaintiffs filed their fifth amended complaint naming Dr. M. James Vargas ("Vargas"), a Jail psychiatrist, as a defendant. Pursuant to 42 U.S.C. § 1983, plaintiffs allege that Vargas violated Alvarez's eighth amendment rights by acting with deliberate indifference towards Alvarez's medical needs. Although plaintiffs had referred to unknown deputy sheriffs in their prior complaints, no mention had been made of a Jail psychiatrist as a possible defendant. Indeed, in the third and fourth amended complaints plaintiffs state, "All defendants are California peace officers except any governmental entity defendant."

Vargas moved to dismiss the complaint, contending in part that the statute of limitations barred plaintiffs' claims against him. The Court denied the motion on June 9, 1986. Subsequently, Vargas filed this motion for reconsideration on the statute of limitations issue.

## II. DISCUSSION

The claims in this action accrued on January 3, 1984, the date of Alvarez's suicide. At that time, the statute of limitations governing § 1983 actions in California was three years. Indeed, for more than twenty years the Ninth Circuit had held that the three-year statute of limitations for actions "upon a liability created by a statute" set forth in California Code of Civil Procedure § 338(1) governed all § 1983 claims brought in California. See *Smith v. Cremins*, 308 F.2d 187 (9th Cir.1962).

On April 17, 1985 the Supreme Court handed down its decision in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In *Wilson*, the Supreme Court held that all § 1983 claims are to be governed by state statutes of limitations for personal injury actions. In California, *Wilson* mandates that the appropriate statute of limitations for § 1983 claims is the one year statute provided in California Code of Civil Procedure § 340.

The Ninth Circuit has addressed the question of whether *Wilson* should be granted retroactive application on two occasions. In *Rivera v. Green*, 775 F.2d 1381 (9th Cir.1985) the Ninth Circuit applied *Wilson* retroactively to a § 1983 action brought in Arizona where such retroactive application served to lengthen the statute of limitations period. However, in *Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1985), the Ninth Circuit refused to apply *Wilson* retroactively to shorten the statute of limitations governing a § 1983 action filed in California. In both *Rivera* and *Gibson*, the Ninth Circuit addressed the issue of retroactive application with respect to actions that were filed prior to *Wilson*. Here, however, plaintiffs did not file their claims against Vargas until April 18, 1986, more than a year after the *Wilson* decision.[1]

This case raises the open question of how *Wilson* should apply to claims that accrued prior to, but were filed after the date *Wilson* was decided.[2] To resolve this issue, the Court must apply the three-part test set forth by the Supreme Court in *Chevron Oil v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) for determining whether to apply a new rule of law retroactively. These three factors are: (1) whether the decision establishes a new principle of law; (2) whether retroactive application will further or retard the purposes of the rule in question; and (3) whether retroactive application will produce substantial inequitable results. *Chevron, supra*, at 106–07, 92 S.Ct. at 355.

## A. THE CHEVRON TEST

In applying the *Chevron* criteria, the Court is guided by the Ninth Circuit's analysis in *Gibson v. United States, supra*. As explained in *Gibson*, the first *Chevron* factor counsels against retroactive application of the one year statute of limitations because *Wilson* marked "a clear break from settled circuit authority" which had long established a three-year statute of limitations for § 1983 claims brought in California. *Gibson, supra,* at 1339. The second factor is neutral here, as in *Gibson*, because the Ninth Circuit's "clear consistent enunciation of the previous rule served the chief policy goals articulated in *Wilson* ...." *Id.*

The third factor—whether retroactive application will produce inequitable results— counsels against retroactive application under the facts of this case. On the date *Wilson* was decided, plaintiffs' claims were already more than one year old. Therefore, retroactive application of *Wilson* would serve to immediately extinguish plaintiffs' claims and to deny plaintiffs the opportunity of filing their action.[3] Although plaintiffs' claims were more than a year old, they were well within the three-year statute of limitations on the date *Wilson* was announced. Consequently, it would produce substantial inequitable results to preclude plaintiffs from filing their § 1983 claims by granting *Wilson* retroactive effect.

---

1. The date of the filing of the fifth amended complaint—April 18, 1986—must be taken as the date for determining whether plaintiffs' action against Vargas is timely. Plaintiffs concede that they cannot take advantage of the Fed.R. Civ.P. 15(c) relation back doctrine and state in their opposition that "the claim against Vargas was a new claim against a new party who was not sought to be named in the original complaint." This is correct. See *Schiavone v. Fortune*, — U.S. —, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986).

2. For convenience, claims that accrued but were not filed prior to *Wilson* shall be referred to as pre-accrued or pre-existing claims.

3. Recently, in *Gamel v. City of San Francisco*, 633 F.Supp. 48 (N.D.Cal.1986), Judge Weigel applied *Wilson* retroactively where the plaintiff had almost eight months after *Wilson* was decided before his claim became barred under the one year statute of limitations. Judge Weigel stated, however, that "[t]he result could be different if the one year period had already passed by the time *Wilson* was announced." *Gamel, supra* at 50. That is the case here.

Weighing the three *Chevron* factors together, the Court concludes that *Wilson* should not be applied retroactively to deny plaintiffs the opportunity to file an action on a claim which had accrued and was still timely under the former statute of limitations on the day *Wilson* was decided. The inquiry, however, does not end here. The Court must next decide how much time plaintiffs should be permitted to file their claims after the *Wilson* decision was handed down.

## B. TIME PERMITTED AFTER WILSON FOR FILING

In *Wilson v. Isemingen*, 185 U.S. 55, 22 S.Ct. 573, 46 L.Ed. 804 (1902), the Supreme Court addressed the issue of applying a new statute of limitations to pre-existing claims and stated:

> It may be properly conceded that all statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing rights of claimants without affording this opportunity; if it should attempt to do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions. It is essential that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action. . . .

*Id.* at 62, 22 S.Ct. at 575.

Subsequent decisions have confirmed that when a legislature or a court establishes a new statute of limitations that would bar pre-accrued claims, plaintiffs must be given a reasonable time or grace period in which to file suit upon such claims. *See e.g. Texaco, Inc. v. Short*, 454 U.S. 516, 527 n. 21, 102 S.Ct. 781, 791 n. 21, 70 L.Ed.2d 738 (1982).

The Ninth Circuit has applied the "reasonable time" approach in labor cases. The effect of the Supreme Court's opinion in *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981) was to change the statute of limitations for Section 301 actions against employers in Washington from three years to three months, and in California from four years to 100 days. In *Barina v. Gulf Trading and Transportation Co.*, 726 F.2d 560 (9th Cir.1984) the Ninth Circuit held that a California plaintiff's cause of action that accrued nine months prior to *Mitchell* was timely when filed within two months after the *Mitchell* decision was announced. However, in *Scoggins v. Boeing Co., Inc.*, 742 F.2d 1225 (9th Cir.1984) the Ninth Circuit held that a Washington plaintiff's cause of action that accrued ten months prior to *Mitchell* was *not* timely when filed eight months after the *Mitchell* decision was announced. Even though Scoggins' action was timely under the prior three-year statute, the Ninth Circuit reasoned:

> Scoggins knew the correct statute of limitations eight months before he filed his suit. Unlike the plaintiff in *Barina*, who quickly filed his lawsuit after the Court announced in *Mitchell* the shorter statute of limitations, Scoggins delayed filing his lawsuit until eight months after the *Mitchell* decision.

*Scoggins, supra,* at 1228–9.

In *Scoggins*, the Ninth Circuit declined to explicitly set a reasonable time for plaintiffs with pre-accrued claims to timely file their actions after *Mitchell*. Yet the court's decision seems to imply that any time beyond three months—the new statute of limitations period—would *not* be reasonable.

The question of what is a reasonable time after *Wilson* for plaintiffs with pre-accrued § 1983 claims to file suit has been addressed by several courts.[4] The Seventh Circuit, however, has adopted the most comprehensive approach to this issue. In *Anton v. Lehpamer*, 787 F.2d 1141 (7th Cir.1986), the Seventh Circuit held that *Wilson* should not be applied retroactively

---

4. In *Wegrzyn v. Ill. Dept. of Children and Family Services*, 627 F.Supp. 636 (C.D.Ill.1986), the court held that it was reasonable to allow a plaintiff to file an amended complaint, which would be barred under the new statute of limitations, four months after *Wilson* was decided. Similarly, in *Chris N. v. Burnsville, Minn.*, 634 F.Supp. 1402 (D.Minn.1986) the court declined to apply *Wilson* retroactively and held that an action filed six months after *Wilson* was still within "a reasonable period of time following the change in law . . ." *Id.* at 1412. In *Richard H. v. Clay County, Minn.*, 639 F.Supp. 578 (D.Minn., 1986), however, the court found that a delay of almost nine months in filing a pre-accrued claim after *Wilson* was unreasonable.

to bar an action which was filed prior to *Wilson* and was timely when filed. In reaching its decision, the court also took account of the problem of pre-accrued claims. Prior to *Wilson*, the statute of limitations for § 1983 claims in Illinois was five years; *Wilson* changed the statute of limitations to two years. With respect to claims that accrued but were not filed prior to *Wilson*, the Seventh Circuit held:

> [I]n Illinois, a plaintiff whose section 1983 cause of action accrued before the *Wilson* decision, April 17, 1985, must file suit within the shorter period of either five years from the date his action accrued or two years after *Wilson*.

*Id.* at 1141.

■ The Seventh Circuit adopted this approach to "implement [*Wilson*] as quickly as justice permits." *Id.* at 1146. This Court finds the Seventh Circuit approach to be the most just and certain method for determining how long plaintiffs with pre-accrued claims should be granted to file their actions.[5] Adapting this approach to California law, a plaintiff whose § 1983 cause of action accrued before the *Wilson* decision, April 17, 1985, must file suit within the shorter period of either three years from the date his action accrued or one year after *Wilson*, April 17, 1986.

Under this rule, plaintiffs whose claims were near expiration under the former three-year statute of limitations, at the time *Wilson* was decided, would not be granted any additional time beyond the three-year period. However, all other plaintiffs would be granted the new statutory one year period, measured from the date of the *Wilson* decision, to file their claims. The Court finds that this approach satisfies both the "reasonable time" imperative and the mandate of *Wilson*.[6]

The Supreme Court stated in *Wilson* that "[f]ew areas of the law stand in greater need of firmly defined, easily applied rules than does the subject of periods of limitations." *Wilson, supra,* 105 S.Ct. at 1942 (quoting *Chardon v. Fumero Soto,* 462 U.S. 650, 667, 103 S.Ct. 2611, 2621, 77 L.Ed.2d 74 (1983) (Rehnquist, J., dissenting)). Indeed, the purpose articulated by the Supreme Court for its decision in *Wilson* was to identify the appropriate statute of limitations for § 1983 claims with certainty in order to safeguard the rights of federal civil rights litigants and avoid wasteful litigation of collateral limitations issues. The approach taken by the Seventh Circuit and adopted by this Court serves these goals.

■ In the case at bar, the approach adopted requires the dismissal of plaintiffs' claims against Vargas. Here plaintiffs' claims accrued on January 3, 1984. Plaintiffs were required to file suit within the shorter period of three years from the accrual date or one year after *Wilson*. *Wilson* was decided on April 17, 1985. Plaintiffs did not file their claims until April 18,

---

5. While discussing the equities of retroactive application of *Wilson,* the Ninth Circuit stated in *Gibson* that "[t]he defendants are not prejudiced by enforcing the limitations rule prevailing at the time of their alleged wrongful acts." *Gibson, supra,* at 1339. This language supports the argument that all § 1983 claims which accrued in California prior to *Wilson* should be governed by the former three year statute of limitations. This Court rejects such a proposition. While plaintiffs with pre-accrued claims should be permitted a reasonable period of time following *Wilson* in which to file suit, they should not be allowed to disregard *Wilson* and continue to rely on the former law which *Wilson* overturned.

6. Compare, for example, the approach taken in *Gamel v. City of San Francisco,* 633 F.Supp. 48 (N.D.Cal.1986). In *Gamel,* Judge Weigel held that *Wilson* should be applied retroactively to bar a claim that accrued roughly four and one-half months prior to the date *Wilson* was announced. Judge Weigel reasoned that because the plaintiff had almost eight months after *Wilson* to file his claim within the new one year statute of limitations, it was not inequitable to hold the plaintiff to the new limit. This approach, however, raises grave uniformity and certainty concerns. It leaves open questions as to how *Wilson* should be applied to claims that accrued less than one year prior to *Wilson* where retroactive application would allow a plaintiff only a few days or weeks to comply with the new one year statute of limitations. Moreover, the analysis in *Gamel* provides no solution to a case such as the one at bar in which the claims accrued more than one year before *Wilson* was announced.

The Seventh Circuit approach clearly sets forth the time in which *all* plaintiffs with pre-accrued § 1983 claims in California must file suit: either within the former three year period if the statute expired before April 17, 1986, or by April 17, 1986—a full year after the *Wilson* decision. This approach is in harmony with the Ninth Circuit's policy of "advanc[ing] the litigant's ability to pursue Section 1983 remedies at the expense of a (disfavored) statute of limitations defense." *Gibson, supra,* at 1339 (quoting *Rivera, supra,* at 1384).

1986, a year and one day after *Wilson.* Therefore, plaintiffs' claims against Vargas are time barred.

## III. CONCLUSION

For the reasons set forth herein,

IT IS ORDERED that defendant Vargas' motion for reconsideration is granted. Defendant Vargas is dismissed with prejudice from this action.

## ON MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

This Court heard oral argument on four motions in this case on October 6, 1986. First, the defendant County of Los Angeles ("the County") as well as the individual defendants (see note 4 *infra*) moved to dismiss as plaintiffs Ephraim Alvarez, Jr., Angelina Alvarez Irizarry, and Francisco Alvarez ("the sibling plaintiffs"). Second, defendants moved to dismiss this action as against all of the individual defendants. Third, defendants moved for summary judgment on the issue of the adequacy of the medical care provided to decedent Sergio Alvarez. Finally, plaintiff moved for summary judgment on the issue of the denial of due process to decedent Alvarez. This Memorandum sets forth the Court's decision on each of these motions.

## I. *Motion to Dismiss the Sibling Plaintiffs*

Defendants cite *Rothman v. United States,* 434 F.Supp. 13, 17–18 (C.D.Cal. 1977), for the proposition that the siblings of the decedent do not have standing to sue for the death of their brother Sergio Alvarez. On that basis, defendants move to dismiss Ephraim Alvarez, Jr., Angelina Alvarez Irizarry, and Francisco Alvarez, the siblings of the decedent, as plaintiffs. *Rothman* held that family members could only

bring § 1983 claims under circumstances where California law would give the family member a cause of action. In wrongful death cases, this excludes non-heir siblings such as the Alvarez siblings. *Id.* at 17–18. In *Morrison v. Jones,* 607 F.2d 1269, 1275 (9th Cir.1979), *cert. denied,* 445 U.S. 962, 100 S.Ct. 648, 64 L.Ed.2d 237 (1980), and *Kelson v. City of Springfield,* 767 F.2d 651, 654–55 (9th Cir.1985), the Ninth Circuit impliedly overruled *Rothman,* and joined most other circuits to rule that family relationships give rise to certain federal substantive due process rights that cannot be limited by state law.[1] *Cf. Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). The Ninth Circuit has not considered the extent of this due process protection beyond the parent-child contexts of *Morrison* and *Kelson.*

■ The Seventh Circuit has flatly stated that the relationship of siblings does not enjoy due process protection, at least not in the context of a wrongful death claim under § 1983. *Bell v. City of Milwaukee,* 746 F.2d 1205, 1246–48 (7th Cir.1984). *See also, de la Cruz la Chapel v. Ortiz,* 637 F.Supp. 43 (D.P.R.1986). The Tenth Circuit, in *Trujillo v. Board of County Com'rs. of Santa Fe,* 768 F.2d 1186, 1189 (10th Cir.1985), held that a sibling relationship *does* enjoy constitutional protection, but a specific intent to interfere with that relationship is necessary to state a cause of action under § 1983. *Trujillo* held that as a matter of law, a wrongful death claim could not state such a specific intent to interfere with a sibling relationship. (There may be many reasons why a person commits a murder, but preventing the victim's sibling from enjoying the companionship of the victim is not among them.) *Id.* at 1190. This Court need not decide between the approaches of

---

1. *Strandberg v. City of Helena,* 791 F.2d 744, 748 (9th Cir.1986), holds that for a non-minor child, the parents cannot recover in a wrongful death action for loss of parenting; they can only sue for loss of companionship and society. This does not affect the constitutional dimension of the parent's right to sue.

*Bell* and *Trujillo*.[2] Neither approach gives the siblings of Sergio Alvarez any claim for which relief can be granted. The sibling plaintiffs are therefore dismissed.

## II. *The Motion to Dismiss the Individual Defendants*

Defendants move to dismiss this action against all of the individual defendants as barred by the relevant statute of limitations. Cal.Civ.Proc.Code § 340 (West 1982 and 1986 Supp.); *see Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). This Court has previously discussed the effect of *Wilson* on this case in its order entered September 5, 1986, granting Dr. M. James Vargas' motion to dismiss. The parties did not dispute that naming Dr. Vargas raised new facts against a new defendant and therefore stated a new cause of action. As a result, the cause of action against Vargas was untimely, for the reasons set forth in the September 5, 1986 order. The claims against the remaining defendants, however, raise different considerations.

■ The individual defendants named in plaintiff's fourth, fifth, sixth, seventh, and eighth[3] amended complaints, in contrast to Vargas, are alleged to have been involved in the same factual context alleged in the original complaint against the County. If Fed.R.Civ.P. 15(c) applied to this case, the naming of the individual defendants probably would not "relate back" to the filing of the original complaint, since there has been no showing that the individual defendants were on notice about the complaint. *See Schiavone v. Fortune,* —— U.S. ——, 106 S.Ct. 2379, 2385, 91 L.Ed.2d 18 (1986). However, since the state statute of limitations controls the question of whether the individual defendants were timely named, *see Wilson, supra,* and under the California statute of limitations, plaintiff had a substantive right to name these defendants, the Court holds that the defendants were in fact timely named.[4]

Under *Hanna v. Plumer,* 380 U.S. 460, 466–70, 85 S.Ct. 1136, 1141–1143, 14 L.Ed.2d 8 (1965), state statutes rarely will be held to supersede the Federal Rules of Civil Procedure. This is true despite the fact that under *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), where, as here, state law provides the rule of decision, the federal courts are to rule as would the state courts if the state courts heard the same case. The general rule in this area is that the federal courts are bound by state substantive law, but not by state procedure. *See Hanna, supra,* 380 U.S. at 471–73, 85 S.Ct. 1143–44; *Byrd v. Blue Ridge Rural Elec. Coop., Inc.,* 356 U.S. 525, 535–38, 78 S.Ct. 895, 899–901, 2 L.Ed.2d 953 (1958); *Walker v. Armco Steel Corp.,* 446 U.S. 740, 749–

---

**2.** *Rivera v. Marcus,* 696 F.2d 1016, 1025–26 (2d Cir.1982) (due process protection to relationship of half-siblings, in context of foster care) is obviously not reconcilable with *Bell,* but it is consistent both with *Trujillo* and the result here. In *Rivera,* the state sought to remove two children from the custody of their adult half-sibling. The adult in *Rivera* successfully brought a § 1983 suit to keep custody of the children. *Rivera* involves the sort of intentional, direct interference with a relationship which *Trujillo* held was actionable under § 1983. *Cf. Moore v. City of East Cleveland, supra.* A wrongful death action does not involve such an interference.

**3.** The Court on September 9, 1986, heard oral argument on plaintiff's motion for a temporary restraining order, and at that time denied plaintiff's motion to add Michael L. Harper as a plaintiff, and Sherman Block as a defendant, pursuant to Fed.R.Civ.P. 15(a). Plaintiff concedes that Block was intended as a defendant only for the purpose of the injunctive relief which was heretofore sought and denied.

**4.** Even if the naming of the individual defendants did not relate back to the initial complaint, under this Court's order of September 5, 1986, defendants E. Bryant, S. Garren, R. Lowery, C. McCullough, J. Merrifield, J. Rivera, Deputy Wilson, J. Young, Deputy Baytos, Deputy Collins, D. Smothers, Deputy Odenthal, R. Tardiff, Deputy Vandurro, K. Mannis, R. Simmons, J. Barrett, S. Reed, and Deputy Miller were timely named. Without the benefit of the relation-back doctrine of Cal.Civ.Proc.Code § 340, defendants Samuel Sanders, Dan Burt, Joseph Barrett, Daniel Keck, and Ronald Black would not have been timely named. The Court need not rule on the effect of the fact that the delay in naming these latter defendants was due to the County's refusal to provide timely requested discovery to plaintiff.

52, 100 S.Ct. 1978, 1984–85, 64 L.Ed.2d 659 (1980). The line which has proven difficult to draw is this line between substance and procedure.

It is generally agreed that where a state law would not allow the naming of a new party to relate back to a prior pleading, and Fed.R.Civ.P. 15(c) *would* allow relation back, Rule 15(c) controls. *See, e.g., Welch v. Louisiana Power & Light Co.,* 466 F.2d 1344, 1345–46 (5th Cir.1972). However, where state law is less restrictive than Rule 15(c), entirely different concerns are presented.[5]

Two circuits have ruled on the problem presented here. The First Circuit held in *Marshall v. Mulrenin,* 508 F.2d 39, 44 (1st Cir.1974), that where Massachusetts law would allow the substitution of previously unknown defendants, state law controlled over Fed.R.Civ.P. 15(c). The Third Circuit, in *Britt v. Arvantis,* 590 F.2d 57, 60–61 (3d Cir.1978), held to the contrary in a case involving a New Jersey statute. The weight of the academic commentary favors the First Circuit approach. 19 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4509 at p. 152–60, strongly urges that a state law such as California's here and Massachusetts' in *Marshall* represents a substantive policy which, according to *Erie,* must be honored by the federal court.[6] 3 Moore *Federal Practice* ¶ 15.-15[2] n. 4 is somewhat more equivocal, but seems to agree that such a state statute represents a substantive policy entitled to deference by the federal court.

The Ninth Circuit's decision in *Lindley v. General Elec. Co.,* 780 F.2d 797 (9th Cir. 1986), is analogous to this case. In *Lindley,* the plaintiffs named Does in their suit, which was filed in state court. Defendant removed to federal court, where plaintiffs attempted to substitute real persons for the Does. Under California law, such a substitution tolled the statute of limitations, although the substitution was sought after the statute would otherwise have run. *Id.* at 799–800. The Ninth Circuit ruled that the substitution was proper, even though under Fed.R.Civ.P. 15(c), this substitution would not have related back to the earlier complaint. The Circuit reasoned that California's procedure regarding the naming of Does determined when the statute of limitations had run, and that it was not appropriate to apply part of the state's statute of limitations without regard to this savings clause. *Id.; see also Brennan v. Lermer Corp.,* 626 F.Supp. 926, 929–36 and n. 12–13 (N.D.Cal.1986).

Of course, this case involves 42 U.S.C. § 1983, a federal cause of action unlike the state law diversity causes of action at issue in *Marshall* and *Lindley.* Therefore, the federal policies embodied in the Federal Rules of Civil Procedure are entitled to even more weight than they are in a diversity action. However, in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court considered the application of state statutes of limitation to § 1983 suits. The Court there recognized that, as is true in California, "[i]n virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application." *Id.* at n. 17. The Court held that "the length of the limitations period, *and closely related questions of tolling and application,* are to be governed by state law." *Id.* 105 S.Ct. at 1943 (emphasis supplied; citation omitted). The liberal relation-back provision of § 340 is exactly this sort of question of application, which *Wilson* directs should be determined according to state law.

This case is therefore very similar to *Lindley.* Plaintiff did not plead Does, since in a § 1983 suit filed in federal court,

---

**5.** *Schiavone v. Fortune,* —— U.S. ——, 106 S.Ct. 2379, 2381–82, 91 L.Ed.2d 18 (1986) (refusing to allow relation-back in a diversity case governed by New Jersey law) is not controlling in this case, because relation-back in *Schiavone* was not available under state law or Fed.R.Civ.P. 15(c).

**6.** The Rules Enabling Act, 28 U.S.C. § 2072 (1982), is to the same point as *Erie;* the Federal Rules are not intended to "abridge, enlarge, or modify" any state substantive law.

the Federal Rules do not provide for unknown defendants to be named as Does. Here, rather than reading Cal.Civ.Proc. Code § 340 with Cal.Civ.Proc.Code § 474 (West 1979) as in *Lindley,* the relation-back doctrine is part of § 340 itself. It seems clear that it would violate the mandate of *Wilson* to apply only part of § 340 to this case.[7] As in *Lindley* and *Brennan,* the relation-back doctrine should apply in the determination of whether the state limitation period has run.

■ Statutes of limitation define the substantive rights of parties. *Guaranty Trust Co. v. York,* 326 U.S. 99, 110, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945). There can be little doubt that the relation-back provision of § 340 represents a substantive state policy. California wishes to encourage the speedy filing of suits while protecting plaintiffs' right to sue parties who are not readily discoverable. That Cabrales did not (and could not) use Doe pleading does not distinguish this case from *Lindley.*[8] Under California law, Cabrales is allowed to name defendants who relate back to a non-time-barred complaint.[9] The Court holds that the California law applies to this case. In a § 1983 complaint, where California Doe pleading practice would allow a new defendant to be named, Fed.R.Civ.P. 15(c) cannot be used to frustrate the plaintiff's right to name that new defendant. Defendants' motion to dismiss the individual defendants is therefore denied as to all of the individual defendants, except M. James Vargas, who were named in plaintiff's eighth amended complaint.

### III. *Summary Judgment Motions of Both Plaintiffs and Defendants*

■ Defendants seek summary judgment on the issue of the adequacy of the medical care which was provided to the decedent Alvarez. The Court finds that there is a factual dispute both as to what care the decedent Alvarez received, and as to the adequacy of that care. In addition, plaintiff seeks summary judgment on the issue of the failure of the County to provide decedent with the due process protection mandated by state law, state regulations, and *Wolff v. McDonnell,* 418 U.S. 539, 564, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935 (1974). As to this motion, the Court finds that there are triable issues of fact as to the due process which the decedent Alvarez actually received, and as to whether the County had a custom or policy of denying due process. *See Monell v. Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Further, as to both the medical care and the due process issues, the Court finds that the questions of causation and damages, which both sides concede are material and disputed, are so inextricably linked to the substantive issues as to preclude summary judgment. Both parties' motions for summary judgment are therefore denied.

---

7. There is no question that it was excusable for Cabrales to have failed to discover some of the individual defendants before the period set by § 340 had run. The failure was due to the County's six month delay in providing requested discovery to plaintiff. Obviously, inexcusable delay on the part of a plaintiff would raise different considerations not now before this Court.

8. As *Lindley* held, such technical niceties of pleading should not be employed to defeat a party's substantive rights. 780 F.2d at 801–02.

9. There can be no doubt that under the California courts' interpretation of § 340, notice to a new defendant is not a requirement for the relation-back of an amended pleading. *See, e.g., Smeltzley v. Nicholson Mfg. Co.,* 18 Cal.3d 932, 937; 136 Cal.Rptr. 267, 559 P.2d 624 (1977); *Barrows v. American Motors Corp.,* 144 Cal. App.3d 1, 7; 192 Cal.Rptr. 380 (1983); *Coronet Mfg. Co., Inc. v. Superior Court,* 90 Cal.App.3d 342, 344–47; 153 Cal.Rptr. 366 (1979). *Compare Schiavone, supra,* 106 S.Ct. at 2385.