**Lionel S. FOSTER, MD, Plaintiff— Appellant,**

v.

**James BALL, as an individual and an agent of the Medical Board of California, Defendant—Appellee.**

No. 02–16724.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 2003.

Decided Oct. 20, 2003.

Albert J. Garcia, Esq., Berkeley, CA, for Plaintiff–Appellant.

Heidi T. Salerno, Esq., Department of Justice, Office of the Attorney General, Oakland, CA, David W. Hamilton, DAG, Department of Justice, Office of the Attorney General, Oakland, CA, for Defendant–Appellee.

Before: HUG, B. FLETCHER, and TASHIMA, Circuit Judges.

MEMORANDUM *

Plaintiff/Appellant Lionel Foster, M.D., claims malicious prosecution under 42 U.S.C. § 1983 against California Medical Board Investigator James Ball. Dr. Foster asserts that because Dr. Foster is black, Ball intentionally excluded exculpatory evidence from Ball's investigation report on a Medical Board complaint against Dr. Foster. The district court granted summary judgment for Ball, and we affirm.

Dr. Foster cannot recover for malicious prosecution under section 1983 unless the prosecution was conducted with the intent to deprive Dr. Foster of his constitutional rights. *Freeman v. City of Santa Ana,* 68 F.3d 1180, 1189 (9th Cir.1995); *Usher v. City of Los Angeles,* 828 F.2d 556, 562 (9th Cir.1987) ("an exception exists to the general rule [that malicious prosecution is not actionable under section 1983] when a malicious prosecution is conducted with the intent to deprive a person ... of constitutional rights.").

Dr. Foster asserts that Ball violated Dr. Foster's constitutional right to equal protection.[1] For Dr. Foster to establish an equal protection violation, there must be evidence that Ball acted with the intent to discriminate against Dr. Foster on the basis of his race. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."). Discriminatory intent "implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979).

Dr. Foster has presented evidence that his colleague, Dr. Prall, initiated the complaint against Dr. Foster for racist reasons. However, there is no evidence that Investigator Ball excluded the arbitration award from his investigation of Dr. Foster because of his own racial animus. In two other cases that were assigned to Ball for investigation, Ball appears to have acted without regard to race. When he investigated a previous complaint against Dr. Foster, Ball found that Dr. Foster had not been negligent and did not forward the case to the Attorney General's Office. Ball was also assigned to investigate Dr. Kokinos, a white physician who performed the Hernandez surgery with Dr. Foster. Ball recommended that Dr. Kokinos be disciplined by the Board, and she was required to pass a competency exam before her full license privileges were reinstated.[2]

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Dr. Foster also asserts a due process violation based on Ball's failure to include the exculpatory arbitration decision in his investigation report. However, even if there is a constitutional due process right to have an investigator in an administrative proceeding disclose exculpatory evidence in his investigation report, that right is not clearly established. The cases Dr. Foster cites are inapposite both because they relate only to criminal cases and because they require that a prosecutor disclose the exculpatory evidence to the criminal defendant, while here, Dr. Foster has known all along of the favorable arbitration decision. *See, e.g., Geter v. Fortenberry,* 849 F.2d 1550, 1559 (5th Cir.1988)

2. Dr. Foster asserts that Ball probably did not have exculpatory evidence to hide in the investigation of Dr. Kokinos, so that complaint is not relevant to this case. While this argument may reduce the probative value of the evidence of Ball's handling of the Dr. Kokinos complaint, it does not provide evidence that there was racial animus in Ball's handling of the complaint against Dr. Foster.

In addition, Ball testified that he believed he was following Medical Board procedure in investigating whether there was merit to the complaint against Dr. Foster. *See Village of Arlington Heights,* 429 U.S. at 267 ("Departures from the normal procedural sequence ... might afford evidence that improper purposes are playing a role."). The initial complaint against Dr. Foster from the San Jose Medical Clinic contained allegations about eight of Dr. Foster's cases. After consulting with an expert, Ball investigated only one. Ball's report contained statements from each of the witnesses to and participants in the Hernandez surgery, including both Dr. Foster and Dr. Prall. In making his recommendation that a formal accusation be filed against Dr. Foster, Ball relied on an expert's opinion that Dr. Foster had made "extreme departures" from the standard of care. Finally, Ball testified that he believed that the arbitration award, which he did not send to the Attorney General with his investigation report, was irrelevant to his investigation, because California Medical Board Guidelines state that decisions in other forums should not be considered by expert reviewers.

The Medical Board Guidelines on arbitration decisions are only for expert reviewers, and it seems that Ball should have included notice of the arbitration award in his final investigation report, so that the Attorney General's office had all the relevant information. However, Dr. Foster has not shown sufficient evidence that Ball failed to include the arbitration award in his report because he had racial animus against Dr. Foster. For that reason, we affirm the district court's grant of summary judgment.

AFFIRMED.